---

ROWAN (BEARD v.). See Case No. 1,181.

ROWAN (HARRISON v.). See Cases Nos. 6,140–6,143.

ROWAN (MORGAN v.). See Case No. 9,807.

---

## Case No. 12,092.

### In re ROWE.

[18 N. B. R. 429.] [1]

District Court, S. D. New York. May 30, 1878.

BANKRUPTCY — PAYMENT OF COUNSEL FEES BY BANKRUPT—PREFERENCE—COMPROMISE OF DISPUTED CLAIMS.

1. The bankrupts, prior to filing of their voluntary petition, paid their attorneys one hundred and fifty dollars, and assigned to them a large amount of uncollected claims, to secure them, as alleged, for services rendered and to be rendered in the bankruptcy proceedings. An action was commenced against them by the assignee to recover back the moneys paid and the property assigned, on the ground that the same were illegal, fraudulent, and void under the bankrupt law [of 1867 (14 Stat. 517)]. On an application made by the assignee after issue joined, to compound the claim by accepting from the attorneys the claims still uncollected, and releasing them from all claims on those which they had collected, held, that the case was not a proper one for the compounding of disputed claims under Gen. Order No. 20.

2. The expense and delay of a litigation, though considerable, does not justify a compromise in a case where public interests and the due administration of the bankrupt law require the settlement of the questions of law involved by the judgment of the court.

[In the matter of Daniel C. Rowe, a bankrupt.]

OPINION OF THE COURT. This is an application to the court, on the part of the assignee, to compound a claim against the estate under general order No. 20. The register to whom the matter was referred to take proofs, and report the same with his opinion, recommends that the agreement for the compounding of the claim made by the assignee, subject to the approval of the court, be approved. I entirely disagree with this conclusion of the register. The case is as follows: A voluntary petition was filed by two of three partners on the 6th of October, 1876, and they were adjudicated bank-

[1] [Reprinted by permission.]

rupts October 14, 1876. On the 2d of October, 1876, the bankrupts paid to their attorneys one hundred and fifty dollars in money, and assigned to them about four thousand four hundred dollars in uncollected claims due the bankrupts, in consideration, as alleged by the said attorneys, that they should institute and carry on this very case in bankruptcy, and to secure them for service rendered and to be rendered in protecting the bankrupt and their creditors from the losses then impending and likely to happen from sale under execution at a great sacrifice of a large part of the property of the estate. The one hundred and fifty dollars was treated as a retainer, and assignment of the choses in action as collateral security for the proper charges of the attorneys for services and for their disbursements incurred or to be incurred by them in and about the business, including the compensation of other counsel to be retained. The assignee was appointed December 6, 1876. On the 8th of June, 1877, the assignee commenced a suit in equity against said attorneys to recover the said money paid and property assigned, on the ground that the same were illegal and fraudulent and void under the bankrupt law. On the 13th of July, 1877, the said attorneys filed their answer to the bill of complaint, admitting the receipt of the money and the execution of the assignment, but denying that the same were illegal or in violation of the provisions of the bankrupt law, and setting forth with some detail the services rendered, and the expenses incurred by them in and about said business, both before and after the filing of the petition in bankruptcy.

It is claimed by the attorneys that those services were highly beneficial to the creditors in their results. For the purposes of this motion I do not call this in question. It also appears by the averments in the answer and otherwise that a proper charge for the services of the attorneys in all the matters claimed by them to have come within the agreement under which the money was paid, and the assignment made, would be at least one thousand dollars; that they claimed to have paid out in necessary expenses one thousand and eighty-one dollars, and ninety-seven cents; that they have been retained specially by the assignee to defend actions brought against him to recover property in the bankrupt's possession at the time of the assignment, for which they claim as counsel fees two hundred and fifty dollars; that of the claims assigned to them they have collected one thousand eight hundred and nine dollars and thirty-four cents, leaving uncollected about two thousand six hundred dollars. The compromise negotiated between the assignee and the said attorneys is that they shall reassign to him the uncollected claims, and that he shall release them from all claims on those which they have collected, the result of which is claimed to be that the attorneys will

realize above their disbursements one hundred and twenty-seven dollars and thirty-seven cents in full for all their claims against the estate.

The grounds on which I decline to approve this compromise are these:

1. The case is not in its character a proper one for the compounding of disputed claims under general order No. 20. The claim made by the attorneys in their answer raises a question of law of great importance in the administration of the bankrupt law, to wit, the right of the bankrupt on the eve of his bankruptcy to withdraw a considerable part of his estate from the jurisdiction of the court, to secure his attorneys for their fees and charges in proceedings before and after the filing of the petition. Assuming that there is some pretence of validity in the claim, it must be treated as a doubtful one, and, in view of the close relations subsisting between the bankrupt and the attorneys, and the relation of the attorneys to this court as its officers, I think that the use of any doubt there may be about this claim of the attorneys, as a matter of law, as the basis for compounding such claims when asserted in this form, would be productive of great abuses and scandals. Virtually it would allow the bankrupt and his attorneys, under color of a claim of right not yet established, to take into their hands for their own use a part of the estate, and to secure, at any rate, under the form of a compromise, some portion of the property thus withdrawn, to no part of which they may be in fact entitled. I think on grounds of public policy all such claims should be determined on their merits and according to law, and not compromise.

2. The matters of fact put in issue by the answer are few in number, and do not apparently involve the taking of much testimony. No reason or excuse is shown why the testimony has not been taken long ago. It is difficult to understand from the pleadings and the evidence before me why the testimony should not have been taken within sixty days after issue joined. The questions of law involved are such as it is important to have determined, not only in this case, but as affecting other cases in which such claims may be made.

3. Although the compromise is approved by the register, by the assignee, and by the attorneys who are defendants in the suit, and by some of the creditors, yet the testimony taken, consisting mainly of the pleadings in the suit in equity and the agreement for a compromise, does not furnish the court the necessary information as to the character of the services rendered, or the character and details of the expenses incurred by the attorneys, to enable the court to form an independent judgment as to the propriety of the compromise, if it were a suitable case for a compromise at all.

4. The principal reason given for the compromise is the great delay and expense involved in the regular determination of the questions by the prosecution of the suit, and the creditors apparently have acquiesced on that ground.

I think undue importance has been given to this consideration, partly no doubt from the fact that the assignee has neglected to prosecute his suit with diligence; and the expense and delay of litigation, though considerable, ought not to justify a compromise in a case where public interests and the due administration of the bankrupt law require the settlement of the questions involved by the judgment of the court.

Let an order be entered setting aside the report of the register, denying the prayer of the petition, and directing the assignee to prosecute his suit with the utmost diligence.